UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARELI YASMIN HERNANDEZ AVITIA, Independent Administrator of the Estate of JAIRO AVITIA,<br><br>        Plaintiff,<br><br>    v.<br><br>THOMAS DART, et al.,<br><br>        Defendants. | No. 16 CV 1098<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Areli Yasmin Hernandez Avitia's brother committed suicide while a pretrial detainee at the Cook County Jail. Plaintiff believes that her brother's death was the result of inadequate medical care provided by those working at the jail, and brings claims under both federal and state law. Defendants Thomas Dart, the Sheriff of Cook County, and employees of the sheriff's office move to dismiss for failure to state a claim, [45], and defendants Cook County and employees of the County's Cermak Health Services department filed a partial motion to dismiss. [46]. For the following reasons, those motions are granted in part and denied in part.

**I.    Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 558 (2009)). "The purpose of a motion to dismiss is to test the sufficiency of the

complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989). When analyzing a motion under Rule 12(b)(6), a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but a court need not accept legal conclusions or conclusory allegations. *Virnich*, 664 F.3d at 212 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–82 (2009)).

**II.    Background**

Plaintiff Areli Yasmin Hernandez Avitia serves as independent administrator of the estate of her brother, Jairo Avitia. [38] ¶ 3.[1] On January 24, 2015, Mr. Avitia was placed in the Cook County Department of Corrections as a pretrial detainee. [38] ¶ 8. As part of the intake process, Mr. Avitia underwent a physical and mental health evaluation conducted by defendants Lena Colon and Anita Johnson, employees of Cermak Health Services of Cook County. [38] ¶¶ 7, 10. According to the complaint, Colon and Johnson either failed to identify or deliberately disregarded Mr. Avitia's unstable mental health and risk of suicide, even though he had been referred for a psychological evaluation. [38] ¶ 10. Nevertheless, a medical alert for Mr. Avitia was entered that afternoon (by whom is unknown), signaling a need for additional monitoring. [38] ¶ 11.

Despite his need for mental health treatment and supervision, Mr. Avitia was placed in the general population section of the jail. [38] ¶ 12. Defendants Fay Flemister, Gerard Meyer, and Katie Harrison, supervisors at the jail who were

---

[1] Bracketed numbers refer to entries on the district court docket. The operative complaint is [38].

responsible for scheduling shifts for the guards, assigned correctional officers Laura Pliego and Anthony Garner to watch multiple tiers of cells at once. [38] ¶¶ 6, 29, 31. As a result, none of the officers or supervisors checked up on Mr. Avitia closely or regularly. [38] ¶ 32. The next day, Mr. Avitia hanged himself, and he died four days later. [38] ¶¶ 16–17.

This is plaintiff's second amended complaint, after her first was dismissed for failure to state a claim. *See* [34]. Plaintiff amended the complaint to provide more details concerning each defendant's role with respect to claims against the individual defendants, and some additional facts related to the policies and practices in place at the jail. Like the first amended complaint, the second alleges multiple facts in the alternative, and multiple defendants are lumped together under the same claims without distinction, though some of them might have nothing to do with the culpable acts alleged. Plaintiff claims that the complaint is necessarily vague, because she does not know the internal processes of the jail, and there is some merit to that explanation. While plaintiff has a ways to go before proving any claims against defendants, the amended complaint does, as explained below, give the individual defendants sufficient notice of the nature of the claims alleged.

**III. Analysis**

Plaintiff brings claims under 42 U.S.C. § 1983 against the correctional officers, their supervisors, and Cook County (Count I), against Colon and Johnson (Count II), and against Sheriff Dart and Cook County (Count III) for deliberate

indifference to Mr. Avitia's medical needs.[2] She also brings claims for willful and wanton conduct under Illinois law against the correctional officers, their supervisors, and Cook County (Counts IV and V) and against Colon, Johnson, and Cook County (Counts VI and VII).

### A. Count I

To state a claim for inadequate medical care under the Eighth and Fourteenth Amendments, plaintiff must allege (1) an objectively serious medical need, and (2) a prison official's deliberate indifference to that condition. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010). The sheriff's office defendants do not dispute whether Mr. Avitia alleged an objectively serious medical need, but they do question whether the complaint plausibly alleges deliberate indifference with respect to the correctional officers, Pliego and Garner (and other "Unknown Correctional Officers"), or their supervisors, Flemister, Meyer, and Harrison. "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). The sheriff's office defendants argue that the complaint does not allege the requisite mental state—that they knew that Mr. Avitia had a serious medical need—or that they disregarded the risk posed by that need.

While the complaint is not a model of clarity, it does allege that the individual sheriff's office defendants were aware of Mr. Avitia's medical needs and

---

[2] Count II is not subject to either motion to dismiss and will not be addressed.

4

ignored them. Plaintiff alleges, at least in the alternative, that they knew of the risk to Mr. Avitia's health because of the medical alert "related to [his] monitoring." [38] ¶ 11. Beyond a connection to the monitoring of Mr. Avitia, the precise meaning of the medical alert is not alleged. Mr. Avitia was also referred for a psychological evaluation on the same day, (*see* [38] ¶¶ 10, 28), but the complaint does not make clear whether that referral is related to the medical alert. However, it can be reasonably inferred from the complaint that the medical alert indicated the existence of a medical condition that called for a particular monitoring protocol— one that differed from the protocol actually instituted. It can also be inferred that the medical alert was communicated to the individual sheriff's office defendants, establishing their subjective knowledge of Mr. Avitia's medical need. Plaintiff also argues that those defendants' subjective knowledge can be inferred based on their observation of Mr. Avitia's erratic behavior, but the complaint's vague allegation of erratic behavior does not plausibly suggest that the correctional officers or supervisors would have identified a risk of suicide merely by watching him.

Plaintiff also alleges that the individual sheriff's office defendants disregarded the risk of harm to Mr. Avitia by failing to monitor him closely, send him for further evaluation, or provide him with appropriate medical attention. The supervisors, Flemister, Meyer, and Harrison, assigned the correctional officers to "cross-watch" the tiers of cells—to monitor multiple tiers at once—which was presumably inadequate to address Mr. Avitia's needs. And neither the supervisors nor the correctional officers referred him for the mental health treatment he

5

needed, or treated him any differently than others at the jail who did not face a risk of suicide. The complaint need not allege any more to provide defendants with fair notice of the nature of the claims against them. After inferring that the medical alert was communicated to the individual sheriff's office defendants, that the alert conveyed information regarding Mr. Avitia's serious medical need, and that the defendants ignored that need, I conclude that the complaint states a claim under § 1983 against the individual sheriff's office defendants. Thus, their motion to dismiss is denied as to Count I. Plaintiff has, of course, taken on the burden to prove that each individual defendant personally participated in the constitutional violation and had the requisite state of mind.

Plaintiff also alleges that Cook County is liable for the actions of the individual sheriff's office defendants on a *respondeat superior* theory. But, as Colon, Johnson, and Cook County note in their motion to dismiss, plaintiff cannot pursue such a theory under § 1983. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978)). Thus, the Cook County defendants' motion to dismiss is granted with respect to Count I.

**B.    Count III**

To state a claim against the Sheriff of Cook County in his official capacity or Cook County itself, a plaintiff must show the existence of an official policy that is the "moving force" of the deprivation of a constitutional right. *See Monell*, 436 U.S. at 694; *Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012). "A plaintiff

6

can establish an official policy through (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale*, 690 F.3d at 834.

Plaintiff alleges that 16 policies caused Mr. Avitia's inadequate medical care and his eventual death, and that the Sheriff and Cook County knew of the risk of harm posed by those policies but failed to remedy them. Most of those policies amount to a failure to train the staff at the Cook County Jail to avoid violating detainees' constitutional rights. For example, plaintiff alleges a policy of "failing to train its employees to recognize and take proper action regarding the medical needs of pretrial detainees, including training employees and medical personnel to identify those detainees at risk of suicide." [38] ¶ 47(e). But *Monell* claims based on a failure to train require a showing that that failure amounts to the local government's "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). That ordinarily involves alleging a pattern of similar constitutional violations by untrained employees, such that the policymakers had notice that the training program was deficient, but deliberately chose to continue adhering to that program despite the consequences. *See Connick*, 563 U.S. at 62. Plaintiff alleges that at least six suicides have occurred in Cook County Jail in the last two years. But plaintiff does not allege any facts to

7

support an inference that the circumstances surrounding those suicides are similar to those surrounding Mr. Avitia's, or are causally linked to the alleged policies.

Plaintiff also alleges that the Sheriff and Cook County had notice of the inadequacy of the policies due to a United States Department of Justice investigation into Cook County's practices. [38] ¶ 48. But again, plaintiff provides insufficient detail to identify that investigation and explain how its findings relate to Mr. Avitia's death. The complaint provides no other support for its conclusory allegation that both the Sheriff and Cook County were aware that the policies caused constitutional violations, and thus fails to state a claim under § 1983 against the Sheriff or Cook County based on a failure to train.

Several other policies relate to the inadequate monitoring of detainees. Plaintiff accuses the Sheriff and Cook County of "failing to properly monitor detainees['] behavior despite the fact that cameras are readily available to monitor such detainees," and "allowing the constitutionally impermissible practice of cross-watching tiers." [38] ¶¶ 47(c), (n). Plaintiff also alleges that the jail was understaffed, "thus making it more likely that detainees['] serious medical needs would go untreated." [38] ¶ 47(f). The rest are general allegations, such as "[f]ostering an atmosphere . . . where correctional officers and medical personnel are encouraged to disregard serious medical needs of detainees." [38] ¶ 47(a). And some seem completely unrelated to the rest of the allegations in the complaint, like the policy of "encouraging the falsification or destruction of reports to cover up inadequacies in the care and treatment of pretrial detainees." [38] ¶ 47(j).

8

The problem with plaintiff's *Monell* claims, as argued in both motions to dismiss (and which served as a basis for dismissing the *Monell* claims in plaintiff's earlier complaint), is that plaintiff fails to plead a causal link between the alleged policies and Mr. Avitia's injury. Plaintiff alleges that the policies fail to provide pretrial detainees suffering from mental health problems with adequate evaluations, treatment, or monitoring, resulting in the foreseeable risk of harm to those detainees. [38] ¶ 46. But this is too general an allegation. Moreover, plaintiff's theory is based on only one incident—Mr. Avitia's suicide. Even after drawing all reasonable inferences in plaintiff's favor, plaintiff has not alleged that Mr. Avitia's death was the result of an express policy, custom, or practice rather than a random event. *See Gill v. City of Milwaukee*, — F.3d —, No. 16-2846, 2017 WL 897344, at *6–7 (7th Cir. Mar. 7, 2017) (explaining that a plaintiff must plausibly allege a pattern of government employees engaging in similar conduct to state a *Monell* claim based on a widespread practice). Plaintiff does not plead facts allowing an inference that the jail's monitoring protocol or staffing policy was the moving force behind Mr. Avitia's death, or that there existed a widespread practice of ignoring the needs of detainees suffering from mental health issues. In fact, the complaint alleges that someone placed a medical alert in Mr. Avitia's file, and this alert related to monitoring Mr. Avitia. Both motions to dismiss are granted with respect to count III.

### C. Counts IV and V

The sheriff's office defendants argue that plaintiff's state-law claims against them are precluded by Illinois statutes that provide immunity for public employees and entities absent allegations of willful and wanton conduct. *See* 745 ILCS 10/2-202, 10/4-105. But, as explained above, the allegations of the sheriff's office defendants' conduct meet the standard for deliberate indifference. Because the deliberate indifference standard is "remarkably similar" to the standard for willful and wanton conduct, the complaint states claims for willful and wanton conduct. *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001). Thus, the sheriff's office defendants' motion to dismiss is denied with respect to Counts IV and V.

Plaintiff also alleges that Cook County is liable for the actions of the sheriff's office defendants on a *respondeat superior* theory. The Cook County defendants argue that the relationship between Cook County and the Sheriff is not the type of employment relationship that the doctrine of *respondeat superior* requires, invalidating plaintiff's theory. *See Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998) (citing *Moy v. Cty. of Cook*, 159 Ill.2d 519, 526–30 (1994)). Plaintiff responds by seeking leave to amend the complaint to name Sheriff Dart in counts IV and V on a *respondeat superior* theory, and by stating that Cook County must indemnify the sheriff's office defendants under 745 ILCS 10/2-302. Cook County does not object. Thus, the Cook County defendants' motion to dismiss is granted with respect Counts IV and V, but plaintiff has leave to amend the complaint by alleging a claim

against Cook County for indemnification only. Plaintiff also has leave to amend by naming the Sheriff in counts IV and V on a *respondeat superior* theory.

### D. Counts VI and VII

The Cook County defendants rely on a theory of statutory immunity with respect to plaintiff's wrongful death and survival claims against them. In counts VI and VII, plaintiff alleges that Colon and Johnson engaged in willful and wanton conduct that caused Mr. Avitia's suffering and eventual death. In particular, plaintiff alleges that Colon and Johnson failed to recognize or report Mr. Avitia's medical needs during the intake process and failed to ensure that he would receive treatment within a reasonable timeframe. The Cook County defendants cite to Illinois statutes that provide immunity from liability to local public entities and public employees who failed to conduct adequate mental or physical examinations or failed to diagnose mental or physical illnesses. 745 ILCS 10/6-105, 10/6-106(a). But plaintiff notes that the statutory immunity does not extend to a failure to treat someone who was already diagnosed with a mental or physical illness. *See* 745 ILCS 10/6-106(d). To the extent that Colon and Johnson were aware of Mr. Avitia's medical needs (either by deducing it themselves or by a pre-existing diagnosis) and deliberately disregarded those needs by failing to provide him with the mental health treatment he needed, the statute does not shield them from liability. The Cook County defendants' motion to dismiss is denied with respect to counts VI and VII.

## IV. Conclusion

The motion to dismiss by Sheriff Dart and the individual sheriff's office defendants, [45], and the motion to dismiss by Cook County and the individual Cook County defendants, [46], are granted in part. The following claims are dismissed without prejudice: Count I with respect to Cook County; Count III; and Counts IV and V with respect to Cook County.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 3/13/17